STANLEY FISHMAN et al., Plaintiffs-Appellants, v. TEACHERS' RETIREMENT SYSTEM OF THE STATE OF ILLINOIS et al., Defendants-Appellees.

Fourth District   No. 16101

Opinion filed July 24, 1980.

Vihon, Fuchs, Temple & Berman, Ltd., of Chicago, and Jerome Wolfson, of Springfield (Robert T. Fuchs and John T. Rosselli, of counsel), for appellants.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE GREEN delivered the opinion of the court:

We are concerned here with the rights of members of the Teachers' Retirement System (System) (Ill. Rev. Stat. 1977, ch. 108½, par. 16—107) who have served in the armed forces of this country, but were not members of the System at the time of entry into the armed forces, for pension credits for such service pursuant to the terms of section 16—127(5) of the Illinois Pension Code (Ill. Rev. Stat. 1977, ch. 108½, par. 16—127(5)). The section purports to grant such credit only *"if a member returns to teaching service* within one calendar year after discharge * * *."* (Emphasis added.)

On February 22, 1979, plaintiffs C. A. Christ, Oliver McCracken, Willis Rardin, Kern L. Doerner, and Kenneth W. Lumb filed a petition with the Board of Trustees of the Teachers' Retirement System seeking to purchase retirement credits under the System for their military service pursuant to section 16—128 of the Code (Ill. Rev. Stat. 1977, ch. 108½, par. 16—128). On the same date, plaintiff, Stanley Fishman, filed a similar petition. The Board of Trustees denied both petitions and on March 27, 1979, the petitioners filed complaints in the circuit court of Sangamon County pursuant to section 16—200 of the Code (Ill. Rev. Stat. 1977, ch. 108½, par. 16—200) seeking review under the Administrative Review Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*). The two cases were consolidated in that court and on January 3, 1980, it affirmed the decision of the Board of Trustees. We, in turn, affirm the decision of the circuit court.

The case concerns no disputed questions of fact. Section 16—107 describes as members of the System those personnel of the public schools and junior colleges and State and regional offices who qualify as "teachers" under section 16—106 of the Code (Ill. Rev. Stat. 1977, ch. 108½, par. 16—106) with exceptions not important here. At all pertinent times, section 16—127(5) of the Code described the following as periods for which pension credit can be obtained for service in the armed forces:

"Any periods during times of hostilities or a declared national emergency spent in service with the military or naval forces of the United States or in educational programs that prepare for return to teaching sponsored by the federal government for persons discharged from military or naval services and, *if a member returns to teaching service within one calendar year after discharge* or after the completion of the educational program, the further period of not to exceed one calendar year thereafter between time spent in military or naval service or in such educational programs and the return to employment as a teacher, for which the member makes the required payments, as of the date such payments are completed." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 108½, par. 16—127(5).

All plaintiffs have served in the armed forces and, at time of filing their petition, were members of the System. None were members when they entered the armed forces. Plaintiffs Christ, Rardin, and Lumb had not completed their education at the time they entered the military. Plaintiff Fishman had completed his education but had not begun to teach. Plaintiff McCracken taught for two years in Missouri before going back to school for additional credits. He enlisted in the army while in school and became a member of the Retirement System seven years after his discharge. As to plaintiff Doerner, the record only indicates that he became a member of the Retirement System eight years after his discharge.

The ruling of the Board of Trustees and the circuit court's affirmance of that decision was based on the fact that none of the plaintiffs had been members of the System when they entered the armed forces. Plaintiffs contended that those decisions were erroneous because (1) plaintiff McCracken was entitled to credit under the express terms of section 116—127(5) because he was teaching in another State when he entered service, and (2) denial of credits to any plaintiff is a denial to him of equal protection of the law regardless of whether the strict scrutiny or reasonable basis standards are applied to the classification made by section 16—127(5).

Plaintiffs argue that the clause "if a member returns to teaching service" refers to a return to the teaching profession after service by one

who later becomes a member. Plaintiff McCracken, by virtue of his teaching in Missouri prior to service and returning to teaching in Missouri within the stated period after his discharge, would qualify for credit under this interpretation. In support of their position, plaintiffs cite a 1948 Attorney General's opinion that a teacher was entitled to such credits when he was teaching outside the System at the time he began service. 1948 Ill. Att'y Gen. Op. 211.

However, in *People ex rel. Serbin v. Calderwood* (1948), 333 Ill. App. 541, 77 N.E.2d 849, the court rejected a similar argument in regard to a World War II veteran's claim in regard to a police pension under legislation stating that "Any member * * * may compute as a part of his * * * service, time spent in the service * * *" during various wars. (Ill. Rev. Stat. 1945, ch. 24, par. 894.) It is notable that even though the legislation had no reference to the member *returning* to police work, membership in the System at the time of entry into the armed forces was held to be a condition precedent to pension credit for his time in service. Following *Calderwood,* the Attorney General published a second opinion which concluded that a person who was not a member of the System prior to service in the armed forces was not entitled to such pension credit. 1960 Ill. Att'y Gen. Op. 88.

■■ We agree with the second Attorney General's opinion. The statutory language here is even less favorable to pension credit than that in *Calderwood* because of the use of the phrase "member returns to teaching" which was absent there and implies that the teacher must be a "member" at the time of returning to teaching and not a teacher who returns to teaching and, at that time, becomes a member. Although the question is a close one, we conclude that the Board of Trustees and the circuit court properly held that plaintiff McCracken was not entitled to pension credit.

■■ We now turn to the plaintiffs' contention that they have been denied equal protection of the law. As we have interpreted section 16—127(5), it operates upon a group of members of the System who have served in the armed forces and makes two classifications. One classification consists of those of the group who were "members" of the System at the time of their entry into the service and who returned "to teaching service" within a specified short period thereafter. This class may obtain retirement credit. The other class are those of the group not meeting the requirement of the first class. All plaintiffs are in this class, and the class is denied pension credit.

We reject summarily plaintiffs' contention that the classification is an invidious one requiring strict scrutiny under State or Federal constitutions because it concerns their right to travel and also their claim that it requires strict scrutiny under the State constitution because it is based on gender.

Unlike *Memorial Hospital v. Maricopa County* (1974), 415 U.S. 250, 39 L. Ed. 2d 306, 94 S. Ct. 1076 (indigent's right to free hospital and medical care) and *Shapiro v. Thompson* (1969), 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (indigent's right to general welfare assistance), cases enunciating the high priority right to travel, the rights to the pension credit are not conditioned upon the length of any prior residency. Rather, the pension rights are conditioned upon prior employment by the State granting the rights and prior membership in the System. Even if consideration be given to the likely relationship between prior membership in the System and prior residence within the State, we note that a Federal district court has held that a State may condition benefits under a veteran's preference statute to residence within the State at the time of entry into the service and may properly exclude veterans who later become residents without infringing upon their constitutional right to travel. (*Langston v. Levitt* (S.D.N.Y. 1977), 425 F. Supp. 642.) Similarly, there is no gender qualification for receipt of the pension credit. The classification is between classes of veterans. All plaintiffs are males. By no stretch of the imagination does the classification discriminate against them because of their masculinity.

■■ Neither the due process clause of the fourteenth amendment nor a similar provision of article I, section 2 of the Illinois Constitution of 1970 prohibits the legislature from enacting legislation which affects one class of people differently from others. However, even when the classification does not require strict scrutiny, as previously explained, it must be founded upon some substantial difference in circumstance or conditions related to the classification and not be arbitrary. (*Hamilton Corp. v. Alexander* (1972), 53 Ill. 2d 175, 290 N.E.2d 589.) By the legislation in question, the legislature has granted to veterans who taught in Illinois prior to their service a benefit in returning to teaching in Illinois not available to teachers who began their teaching here after their military service. One of the recognized purposes of a veteran's preference law is to "ease the transition from military to civilian life." (*Personnel Administrator v. Feeney* (1979), 442 U.S. 256, 265, 60 L. Ed. 2d 870, 879, 99 S. Ct. 2282, 2288.) A State may reasonably deem itself to owe a greater responsibility to ease the transition to civilian life of those who were in its employ as teachers just prior to answering the call to military service than to veterans who were not among its teachers when answering that call. Another reasonable basis of the classification may be to encourage young teachers likely to be called into the armed forces to take employment in the public schools of the State secure in the knowledge that, if called into the service, the time spent there will not be lost for pension purposes. Although there are many reasons why granting pension credits to all veterans would be logical, the two classes involved are not

similarly situated and the classifications created were not arbitrary or unreasonable.

Although the classification may seem less reasonable in regard to some plaintiffs than to others, language of the United States Supreme Court in *New York City Transit Authority v. Beazer* (1979), 440 U.S. 568, 59 L. Ed. 2d 587, 99 S. Ct. 1355, is pertinent. There the court upheld a Transit Authority rule not to employ persons who used narcotic drugs or methadone. In rejecting the claim that the rule discriminated against persons who were successfully completing a methadone program, the court stated:

> "Because it does not circumscribe a class of persons characterized by some unpopular trait of affiliation, it does not create or reflect any special likelihood of bias on the part of the ruling majority. Under these circumstances, it is of no constitutional significance that the degree of rationality is not as great with respect to certain ill-defined subparts of the classification as it is with respect to the classification as a whole." 440 U.S. 568, 592, 59 L. Ed. 2d 587, 607, 99 S. Ct. 1355, 1369-70.

For the reasons stated, we affirm.

Affirmed.

TRAPP and WEBBER, JJ., concur.