JAMES T. PHELAN *et al.*, Plaintiffs-Appellants, v. JEFFREY R. KEISER, Defendant-Appellee.

Fifth District    No. 5—99—0470

Opinion filed March 24, 2000.

Timothy F. Campbell and Timothy A. Brinkley, both of Godfrey, for appellants.

Anthony L. Martin, of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

James and Betty Phelan were injured in an automobile accident on November 22, 1996, and filed a personal injury action on December

3, 1998. Defendant, Jeffrey Keiser, moved to dismiss the suit because it was filed 11 days after the statute of limitations ran. The Phelans' opposition to the motion to dismiss was based on the conduct of defendant's liability insurer, Madison Mutual Insurance Company (Madison Mutual). Plaintiffs claim that Madison Mutual's conduct tolled the statute of limitations based on the doctrine of equitable estoppel. Plaintiffs appeal from the circuit court's order granting defendant's motion to dismiss. We affirm.

■ Under section 2—619 of the Code of Civil Procedure, a complaint is subject to involuntary dismissal if the action was not commenced within the time limited by law. 735 ILCS 5/2—619(a)(5) (West 1998). The standard of review in this case is *de novo*, as it is an appeal from a circuit court order granting a motion to dismiss based on affirmative matters allegedly defeating the underlying claim. See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 189, 680 N.E.2d 265, 270 (1997). When a defendant files a motion to dismiss under section 2—619, all well-pleaded facts and reasonable inferences are accepted as true for the purpose of the motion. See *Barber-Colman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1073, 603 N.E.2d 1215, 1222 (1992).

■ In *Vaughn v. Speaker*, 126 Ill. 2d 150, 533 N.E.2d 885 (1988), the Illinois Supreme Court listed six elements of equitable estoppel and gave guidance to Illinois courts on when estoppel can be applied in cases involving the statute of limitations. The six elements include: (1) a misrepresentation or concealment of material facts through the words or conduct of the party to be estopped, (2) knowledge by the party against whom the estoppel is alleged that the representations were untrue, (3) no knowledge of the truth respecting the representations on the part of the party asserting equitable estoppel, (4) a reasonable expectation of the party estopped that his representations will be acted upon, (5) a good-faith reliance to its detriment by the party asserting estoppel, and (6) prejudice to the party asserting estoppel if the other party is permitted to deny the truth of its representations. See *Vaughn*, 126 Ill. 2d at 162-63, 533 N.E.2d at 890.

In *Vaughn*, the facts related to the basis for estoppel included allegations that the insurer conceded liability, paid the property damage claim, offered $15,000 to settle the personal injury claim (which offer was apparently never withdrawn), and engaged in extensive negotiations regarding the extent of personal injuries. In *Vaughn*, the trial court dismissed the plaintiff's complaint as untimely. The supreme court, while agreeing that the complaint was untimely filed, found that an issue of fact existed as to whether the defendants were estopped to assert the statute of limitations. The cause was thus

remanded so that the circuit court, as the trier of fact, could determine whether the insurer's conduct lulled the plaintiffs into delaying the filing of their complaint and whether, if the defendant's conduct was unintentional, the plaintiffs' reliance in delaying suit was reasonable. *Vaughn*, 126 Ill. 2d at 164, 533 N.E.2d at 892.

■ In the case at bar, the parties agreed that the trial judge would hear the motion to dismiss. The trial court, as the trier of fact, heard the evidence and made a determination to dismiss plaintiffs' complaint.

At the hearing on the motion to dismiss, James Phelan testified that less than a year after the automobile accident he and his wife had finished treating for the injuries they sustained. He testified that in September of 1997 Madison Mutual asked him to sign a medical release. He sent the signed release to Madison Mutual but did not hear from it. James Phelan testified that in April and May of 1998, he repeatedly contacted the insurance company and was told that someone would contact him, but no one did until claims adjuster Pamela Behme met with them in July of 1998. Phelan testified that it was not until he contacted a lawyer after November 22, 1998, that he was made aware of any time limit in presenting a claim. Phelan testified that until then he thought that once he had contacted Madison Mutual and was in negotiations with the company, the time limit was tolled.

James Phelan further testified that he never discussed the statute of limitations with Pamela Behme. He testified that he knew there was a time limit within which he needed to take some action, but it was his understanding that all he needed to do was contact the insurance company. He conceded that no one at Madison Mutual ever told him that. He testified that on July 13, 1998, he asked Behme whether he should get an attorney. Behme told him that she could not answer that question. Phelan testified that he refrained from hiring an attorney earlier because of ongoing negotiations between him and Madison Mutual.

Betty Phelan testified that it was not until she and her husband met with a lawyer on December 1, 1998, that she was made aware of a time limit for presenting her claim for personal injuries. She testified that she knew there was a two-year time limit, but she did not think a lawsuit had to be filed. She thought the time limit was tolled as long as she and her husband continued to negotiate with the insurance company. She believed that once a claim was presented to the insurance company, no lawsuit had to be filed.

Pamela Behme, a casualty claims adjuster for Madison Mutual Insurance Company, testified that she was assigned the Phelan claim on December 3, 1996. At that time, Behme had settlement authority up

to $25,000. Behme testified that early on she determined that Madison Mutual owed the claim. Behme contacted the Phelans to determine the extent of their injuries. She reviewed their medical records and met with the Phelans at their home on July 13, 1998. On that date she offered to settle Betty's claim for $7,500. The Phelans refused this offer. Behme testified that at no time did she advise the Phelans that Madison Mutual was not going to pay their claim.

Behme also testified that at the July 13 meeting she realized that there was a greater claim for lost wages for James Phelan's claim. She told James Phelan at that time that she would need to obtain documentation from his employer concerning those wages. In August of 1998, Behme requested and received the Phelans' tax records for 1995 and 1996. Behme testified that towards the end of August, she requested an authorization to speak with James Phelan's employer. She testified that was the last contact she had with the Phelans, and she did not hear from them again until they filed this lawsuit. Behme testified that she did not make any suggestion to them that they should hire counsel. Behme did not believe it necessary to inform the Phelans of the statute of limitations because in July of 1998 James Phelan told Behme, "[W]e need[ ] to get moving on this because the two[-]year statute [is] approaching." She testified that she never told them that it was not necessary to file a lawsuit.

Madison Mutual made an offer to settle Betty Phelan's claim for $7,500, which the Phelans rejected. Madison Mutual made no offer to settle the personal injury claim of James Phelan. Madison Mutual did not advance payments for lost wages or medical expenses and did not encourage the Phelans to delay in filing suit or to hire an attorney. Although the plaintiffs believed that the statute of limitations was tolled as long as negotiations continued, that assumption was made by them, separate and apart from any statements made to either plaintiff by Madison Mutual. The Phelans concede that their last contact with Madison Mutual was in September of 1998. They had until November 22, 1998, to file suit. Based on these facts, the trial court ruled, "Merely settling part of plaintiffs' claim and negotiating the balance without some act or statement, intended or otherwise, that led the plaintiffs to miss the limitation deadline is insufficient to invoke equitable estoppel."

Having considered the facts, along with the six elements of equitable estoppel, we cannot find that the trial court's decision was errone-

ous. We affirm the circuit court's ruling dismissing the case with prejudice.

Affirmed.

RARICK and WELCH, JJ., concur.